In the Matter of the Probate of the Will of ANNIE C. MACDOWELL, Deceased.

WESTCHESTER TRUST COMPANY et al., Appellants; JESSIE M. GIBSON, Respondent.

Trusts — will — definition of charitable trusts — construction of will bequeathing a trust fund of which the income is to be used in maintaining a home for women of a class named therein — validity of such trust not affected because a preference is given to certain persons of the class specified — when possible insufficiency of the fund does not make the trust invalid.

1. Section 12 of the Personal Property Law (Cons. Laws, ch. 41) sanctions the creation of charitable trusts and relieves such trusts as are religious, educational, charitable or benevolent from the operation of the statute against perpetuities. If the purpose to be attained is personal, private or selfish, it is not a charitable trust; but when the purpose to be accomplished is that of public usefulness unstained by personal, private or selfish considerations, its charitable character insures its validity.

2. Where testatrix gave to her executor and trustee a fund to be invested and the income to be expended in hiring and maintaining a house "to be used as a home for refined, educated Protestant gentlewomen, whose means are small and whose home is made unhappy by having to live with relatives, who think them in the way," such bequest creates a charitable trust within the meaning of the statute.

3. The fact that testatrix requested that "the preference of being an inmate of this home" should be given to certain relatives and friends and their descendants does not invalidate the trust. The dominant purpose of the testatrix was to create a home "for refined, educated Protestant gentlewomen," and the reasonable interpretation of the language employed is that such of her relatives and friends as were named in the preferential class who were within the class designated have a preference over others.

4. The fact that among the relatives and friends named there were three men is not inconsistent with the declared purpose of the testatrix, because this would permit such of the female descendants of these three men as were within the designated class to avail themselves of the right to have a preference over others if they sought membership in the home.

5. The inadequacy of the trust fund for the purpose for which it is intended cannot in any way affect its validity. If circumstances render it impracticable to carry out the trust in the precise manner contemplated by the testatrix, the Supreme Court will so apply the *cy pres* doctrine that the fund may be devoted to other charities as nearly as possible like that specifically mentioned.

*Matter of MacDowell*, 170 App. Div. 245, reversed.

(Argued February 22, 1916; decided March 21, 1916.)

APPEAL from so much of an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 17, 1915, as affirmed a decree of the Westchester County Surrogate's Court declaring invalid a trust attempted to be created by the will of Annie C. MacDowell, deceased.

The facts, so far as material, are stated in the opinion.

*Daniel S. Remsen* for Westchester Trust Company, appellant. If the purpose of the trust is charitable or benevolent within the statute it is valid. (Personal Property Law, § 12; *Allen* v. *Stevens*, 161 N. Y. 122; *Sailors Snug Harbor* v. *Carmody*, 211 N. Y. 286; *Matter of Griffin*, 167 N. Y. 71; *Bowman* v. *D. & F. M. Society*, 182 N. Y. 494; *Matter of Robinson*, 203 N. Y. 380; *Matter of Cunningham*, 206 N. Y. 601.) In order that a trust may be held to be charitable or benevolent within the statute it must be public in nature and its general purpose must be the well being of humanity or some specified but indefinite class or part thereof. (*Matter of Shattuck*, 193 N. Y. 446; *Allen* v. *Stevens*, 161 N. Y. 122; *Sailors Snug Harbor* v. *Carmody*, 211 N. Y. 286.) In ascertaining the intent of a testatrix her will must be read in the light of the rule of law (1) that charitable trusts are highly favored and that a liberal construction will be adopted in order to render that intent effectual, and (2) that where a provision is fairly susceptible of more than one construction the one that sustains the will is to be preferred. (*Matter of Robinson*, 203 N. Y. 380; *Mat-*

*ter of Cunningham,* 206 N. Y. 601.)  A charity which is·
otherwise public is not deprived of that character by
directing that in the administration of the charity a
preference be given among eligible persons. (*Perin* v.
*Carey,* 65 U. S. 465; *Kent* v. *Dunham,* 142 Mass. 216;
*Darcey* v. *Kelly,* 153 Mass. 433.)

*Egburt E. Woodbury, Attorney-General* (*Robert P.
Beyer* of counsel), for the State of New York, appellant.
The trust created under the last will and testament of
Annie Coe MacDowell, deceased, is valid as a trust for
charitable and benevolent purposes. (*Matter of Lennon,*
92 Pac. Rep. 970; *Carter* v. *Whitcomb,* 74 N. H. 482;
*N. E. Sanitarium* v. *Inhabitants of Stoneham,* 205
Mass. 335; *Little* v. *City of Newburyport,* 210 Mass.
414; *Wilson* v. *First Nat. Bank,* 45 N. W. Rep. 948;
*Sailors Snug Harbor* v. *Carmody,* 211 N. Y. 286; *Mat-
ter of Shattuck,* 193 N. Y. 446; *Matter of Robinson,* 203
N. Y. 380; *Starr* v. *Selleck,* 145 App. Div. 869; 205
N. Y. 545; *Manley* v. *Fiske,* 139 App. Div. 665; 201
N. Y. 546.)  The provisions for preference to certain
specified individuals or their lineal descendants does not
affect the validity of the trust. (*Perin* v. *Carey,* 65
U. S. 465; *Dexter* v. *Harvard College,* 176 Mass. 195;
*Kent* v. *Dunham,* 142 Mass. 216; *Darcey* v. *Kelly,* 153
Mass. 433; *Matter of Robinson,* 203 N. Y. 380.)  The
provisions as to payment of board by the inmates of the
home does not render the trust invalid. (*Schlaudorff* v.
*N. Y. Hospital,* 211 N. Y. 125; *Hospital of St. Vincent*
v. *Thompson,* 81 S. E. Rep. 13; *Thornton* v. *Franklin
Square House,* 200 Mass. 465; *Jensen* v. *Maine E. & E.
Infirmary,* 78 Atl. Rep. 898; *Little* v. *City of Newbury-
port,* 210 Mass. 414.)

*William W. Scrugham* and *Graham Witschief* for
respondent.  The trust attempted to be created by the
will of the testatrix cannot be carried out according to

her intention because the fund provided is not sufficient to do so. The Supreme Court has no power to devote the fund to any kindred purpose under the *cy pres* doctrine, because it has power to apply that doctrine to charitable trusts only when conditions have changed since their creation and not at their very inception. The said trust is, therefore, invalid. At least it is not one upon which the court should look with favor and be astute in finding reasons for upholding. (*Johnson* v. *Bowen*, 95 Atl. Rep. 370; *Gilman* v. *Hamilton*, 16 Ill. 225; *Morgan* v. *G. P. Seminary*, 70 Ill. App. 575; 171 Ill. 444; *Tilden* v. *Green*, 130 N. Y. 29; *Allen* v. *Stevens*, 161 N. Y. 122; *Sailors Snug Harbor* v. *Carmody*, 211 N. Y. 286.) The trust attempted to be created by the will of the testatrix, being by its terms in perpetuity and not measured by lives, is void, unless it is validated by section 12 of the Personal Property Law. (*Allen* v. *Stevens*, 161 N. Y. 122; *Matter of Griffin*, 167 N. Y. 71.) The trust attempted to be created by the will of the testatrix is not charitable or benevolent, and, therefore, is not validated by section 12 of the Personal Property Law. (*Jackson* v. *Phillip*, 14 Allen, 539; *Saltonstall* v. *Sanders*, 11 Allen, 446; *Mason* v. *Zimmerman*, 81 Kan. 779; *Dulles Estate*, 218 Penn. St. 162; *People* v. *Powers*, 8 Misc. Rep. 628; 2 Perry on Trusts [6th ed.], § 697.) If the preference given to specified persons as beneficiaries of the trust attempted to be created by the will of the testatrix is not absolute, and such beneficiaries are to be determined by applying the test of whether they come within the general class, then the trust is not one which can be executed by judicial decree and is, therefore, void. (*Matter of Shattuck*, 193 N. Y. 446; *Matter of Robinson*, 203 N. Y. 380; *Matter of Cunningham*, 206 N. Y. 601; *Fairchild* v. *Edson*, 154 N. Y. 199.) The trust attempted to be created by the will of the testatrix is not public in its nature and its general purpose is not the well being of humanity or some specified but indefinite class or part thereof, but such pur-

pose is the benefit of specified individuals. The trust, therefore, is not one of those validated by section 12 of the Personal Property Law. (*Matter of Shattuck*, 193 N. Y. 446; *Russell* v. *Allen*, 107 U. S. 163; *Franklin* v. *City of Philadelphia*, 2 Penn. D. R. 435.)

SEABURY, J. This case presents for judicial construction a clause in the will of Annie Coe MacDowell. The clause of the will which has given rise to conflicting contentions is that in which the testatrix attempted to found the "Mary Randol Memorial." This clause provides as follows:

"I give and bequeath to my Executor and Trustee, here in after named; all my portion of my Father's estate, now held in trust for me, under his last Will, and which portion I have under his last Will, the right to bequeath, and in addition, all my own money, which is now in bond and mortgages, and five savings banks, amounting to about ten thousand dollars,

"To be well invested, and the income derived from both, to be used for hiring a house, and maintaining same, in a respectable neighborhood, within the city limits of Yonkers, New York, to be used as a Home for Refined, Educated, Protestant, Gentlewomen, whose means are small, and whose home is made unhappy, by having to live with relatives, who think them in the way:    *    *    *

"This Home to be called the 'Mary Randol Memorial Home;' I wish the preference of being an inmate of this Home, to be given to my sister Jessie, and my cousins, and their lineal descendants forever.

"Namely: Mrs. Philip H. Remington, Miss Elizabeth Remington of Windsor, Conn.; Miss Bessie Terhune, Mr. Richard Morrell, Passaic, New Jersey; Mr. Harry Masters, Passaic, New Jersey; Mr. Enos Randol Hyatt, 277 Broadway, N. Y.: The same privilege is extended to my friends:

"Namely: Miss Mary A. Hall, Port Richmond; Miss Adelaide Hall, Port Richmond, Staten Island; Miss Inlia Frances Bangs, Mrs. Enos Randol Hyatt, Miss Annie E. Scott, Washington, Iowa; Rev. Mrs. George W. Huntington, Newburgh, N. Y.

"To come and go with perfect freedom, and not confined to rules.

"All the inmates of this Home, are to pay board, each week they are there, with their small means.  The price not to exceed seven dollars per week; towards paying the running expenses of the house, which will have a housekeeper at the head."

It is claimed on behalf of the proponent and the attorney-general that this clause creates a valid charitable trust.  The contestant contends that the trust attempted to be created is not a valid charitable trust and is void. The changes that have been made in this state as to the law of charitable trusts and the history of the existing rule have been recently so thoroughly discussed in this court that we may proceed at once to a consideration of the existing statutory provisions.  (*Tilden* v. *Green*, 130 N. Y. 29, 45; *Allen* v. *Stevens*, 161 N. Y. 122, 141; *Trustees of Sailors' Snug Harbor* v. *Carmody*, 211 N. Y. 286.)

Section 12 of the Personal Property Law (Cons. Laws, ch. 41) sanctions the creation of a charitable trust.  This section relieves such trusts as are religious, educational, charitable or benevolent within the meaning of this provision of the law, from the operation of the statute against perpetuities.  (*Allen* v. *Stevens, supra*, at page 143; *Matter of Griffin*, 167 N. Y. 71, 81.)  The question to be determined is whether the trust attempted to be created by the testatrix is a charitable trust within the meaning of this statute.  If it is, it is not affected by the statute against perpetuities.  If it is not, it is void because it creates a perpetuity.

It has been held by this court that the statute referred

to was intended to restore the law of charitable trusts as that law was declared to exist in the case of *Williams* v. *Williams* (8 N.Y. 525). (*Trustees of Sailors' Snug Harbor* v. *Carmody, supra,* at page 298.) In *Williams* v. *Williams* (*supra*) it was held that the law of charitable trusts as recognized in England prior to the Revolution was in force in this state. Many definitions of a charitable trust have been formulated, but all the definitions that have been attempted carry the implication of public utility in its *purpose.* (*Jones* v. *Williams,* Ambler, 651, 652; *Mitford* v. *Reynolds,* 1 Phillips, 185, 191; *Coggeshall* v. *Pelton,* 7 Johns. Ch. [N. Y.] 292, 294; *Perin* v. *Carey,* 24 How. [U. S.] 465, 506; *Vidal* v. *Girard's Executors,* 2 How. [U. S.] 127; *Williams* v. *Williams, supra,* at page 533; *Atty.-Gen. ex rel. Bailey* v. *Moore,* 19 N. J. Eq. 503; *Ould* v. *Washington Hospital for Foundlings,* 95 U. S. 303.) If the purpose to be attained is personal, private or selfish, it is not a charitable trust. When the purpose accomplished is that of public usefulness unstained by personal, private or selfish considerations, its charitable character insures its validity. With these principles in mind we approach the disputed clause of the will of the testatrix to determine whether the purpose of the trust attempted to be created is public and charitable or personal and selfish. Before we shall be able to determine whether the purpose of the trust attempted to be created is public or private, charitable or selfish, it is necessary to ascertain the character of the trust which the testatrix intended to create.

If the clause of the will which gives a preference to certain persons had not been included there would be no room for the claim that the purpose of the testatrix was personal, private or selfish. It is upon this preferential clause that the respondent and the courts below based their view that the intention of the testatrix was selfish rather than charitable. Thus the learned surrogate in expressing the view that was subsequently adopted in the

prevailing opinion of the Appellate Division, said: "The last clause of the will referred to [meaning the clause as to preferences] shows conclusively to my mind that the testatrix intended to prefer these six relatives and their descendants. She also intended to prefer her six friends named. Her intention was to provide a home for these relations and their descendants and her friends to the exclusion of all others. This then would mean that the income of the so-called trust would be devoted in part, at least, if not entirely, to a private use. This being so, the entire gift would be invalid." We do not think that this interpretation gives effect to the intention of the testatrix, as that intention is expressed in the will. The view adopted by the learned courts below assumes that the preferred class are not required to possess the qualifications specified in the trust. The dominant purpose of the testatrix was to create a home "for refined, educated, Protestant gentlewomen," and it is evident, we think, that any person that was not within this designated class was not within the contemplation of the trust, and, therefore, not to be accorded any preferential right. In other words, the preferential clause was intended to relate to those who qualified as coming within the class designated. The testatrix did not provide and it is not reasonable to suppose that she intended that all of the persons named "and their lineal descendants forever" should actually become members of the home which she sought to establish. We think that the reasonable interpretation of the language employed is that such of her relations and friends as were named in the preferential clause who were within the class designated, viz., "refined, educated, Protestant gentlewomen," should have a preference over others in becoming members of the home if they so desired. If we so construe the clause the fact that among the relations and friends named were three men is not inconsistent with the declared purpose of the testatrix, because this construction of the clause would

permit such of the female descendants of these three men as were within the designated class to avail themselves of the right to have a preference over others if they sought membership in the home.   If such was the purpose of the preferential clause, there is nothing in the fact that a preference was given to certain persons, that of itself rendered the trust attempted to be created private rather than public, or selfish rather than charitable.   The creation of a preference in favor of relatives or named persons does not of itself make invalid a trust which is in other respects valid.   The trust which this court upheld in *Matter of Robinson* (203 N. Y. 380, 382) gave a preference " to persons who are elderly or disabled from work, and to persons who are Christians, of good moral character," members of certain specified churches, " and who are not addicted to the use of intoxicants or tobacco, nor to attendance at theatrical entertainments."

In *Dexter* v. *Harvard College* (176 Mass. 192) a trust for the promotion of education in Harvard College was under consideration, and KNOWLTON, J., said: " Nor have we been referred to any case which holds that in providing for the administration of such a charity the founder is precluded from directing that preference shall be given to his kin, or to any other class of persons that he favors."

In *Darcy* v. *Kelley* (153 Mass. 433) the court upheld a will in establishing a trust as " a relief fund for the poor," provided that preference should be given to the testator's " poor relatives, if any such there be."

In *Perin* v. *Carey* (*supra*, at page 507) a testamentary gift to the city of Cincinnati for founding two colleges, one for boys and one for girls, was under consideration. In that case the testator had provided that in all applications for admission preference should be given to any and all of his relatives and descendants and to any and all of his legatees and their descendants and to a designated person and his descendants.   The court upheld the validity

of the trust, saying: "preference of particular persons, as to who should be pupils in the colleges which he meant to found, was a lawful exercise of his rightful power to make the devises and bequests."

If the purpose of the testatrix had been to create a trust only for the benefit of her own relatives and certain designated friends and their lineal descendants, the trust would not come within the designation of a charitable trust (*Matter of Shattuck*, 193 N. Y. 446; *Kent* v. *Dunham*, 142 Mass. 216), but if the purpose of the trust was public the mere fact that the testatrix intended to give a preference to certain relatives or friends and their descendants, who should be within the object of the trust, does not make it invalid or preclude it from possessing the character of a charitable trust. (*Matter of Robinson, supra;* *Dexter* v. *Harvard College, supra; Darcy* v. *Kelley, supra.*) The trust not being rendered invalid because of the preferential clause it remains to be determined whether the general purpose of the trust is public. It has often been held that a public charity need have no special reference to the poor. (*Dexter* v. *Harvard College, supra,* at page 194; *Perin* v. *Carey, supra,* at page 506; *Jones* v. *Williams, supra.*) In the case under consideration the object of the bounty of the testatrix was "refined, educated, Protestant gentlewomen," and the purpose of providing a home for such as should come within that designated class is a public charity. Such a charity is within the provisions of the law relating to gifts for charitable purposes (§ 12 of the Personal Property Law), when those provisions of law are construed in the broad and liberal spirit which Judge CHASE, in *Matter of Robinson* (*supra,* at page 385), pointed out should be exercised in construing these provisions of this law. It is in this broad and liberal spirit that the courts have sustained a trust for the establishment and maintenance of a clubroom for young men and boys in the city of New York (*Starr* v. *Selleck*, 145 App. Div. 869; affd., 205 N. Y. 545); a trust fund to

any society that assists poor needlewomen, and if no such organization exists, for the benefit of incapacitated sailors and their families (*Manley* v. *Fiske*, 139 App. Div. 665; affd., 201 N. Y. 546); a trust for a Home for Industrious Girls and Women (*Daly's Estate*, 208 Pa. St. 58); a trust for a Rest Home for Worthy Working Girls (*Sherman* v. *Cong. Home Missionary Society*, 176 Mass. 349); a trust for a Home for Old and Infirm Ladies (*Eliot's Appeal*, 74 Conn. 586); a trust for a Temporary Home for Poor and Invalid Women (*Amory* v. *Atty.-Gen.*, 179 Mass. 89); a trust for a Home for bettering conditions of and comforting Unfortunate Widows and Orphans of a certain city (*Gidley* v. *Lovenberg*, 35 Tex. Civ. App. 203); a trust for "an Old Folks Home" (*Norris* v. *Loomis*, 215 Mass. 344; *Matter of Cleven's Estate*, 142 N. W. Rep. [Iowa] 986; *Matter of Arrowsmith*, 147 N. Y. Supp. 1016) and a trust for the creation of a Sailors' Home (*Trustees of Sailors' Snug Harbor* v. *Carmody*, *supra*).

The trust attempted to be created by the testatrix seems to us, therefore, to be plainly within the benevolent spirit of the statute relating to charitable trusts and to be sanctioned by the adjudications of the courts which have upheld similar trusts. The charitable character of the trust is not impaired by the fact that the inmates of the home which the testatrix sought to create are required to pay board not exceeding seven dollars a week "toward paying the running expenses of the house." (*Schloendorff* v. *Society of N. Y. Hospital*, 211 N. Y. 125, at page 127; *Starr* v. *Selleck*, *supra*; *Little* v. *City of Newburyport*, 210 Mass. 414; *Daly's Estate*, *supra*, at page 64.) It is urged by the respondent that the trust attempted to be created cannot be carried out according to the intention of the testatrix, because the fund provided is not sufficient for this purpose. It may be that the income of a fund of about $63,000 which the testatrix has attempted to donate to the creation of this trust will not be adequate to carry out the trust in the

exact manner in which the testatrix contemplated that it would be carried out, but this fact would not justify declaring the trust invalid and permitting this fund to go to others whom it is clear the testatrix did not intend should receive it. The inadequacy of the trust fund cannot in any way affect the validity of the trust. (*Gilman* v. *Hamilton*, 16 Ill. 225; *Morgan* v. *Grand Prairie Seminary*, 70 Ill. App. 575; affd., 171 Ill. 444.) It is suggested by the respondent that the attempt of the testatrix to create such a trust and the contemplation of so ambitious a project with so inadequate a fund was itself such an act of folly as should incline the court to resolve all doubts as to the construction of the will against its validity. Whether the purpose of the testatrix was wise or unwise is no concern of the court. The concern of the court is to determine whether the trust attempted to be created is valid or invalid and if it is susceptible of two interpretations, one of which renders it invalid and one of which renders it valid, the court must, under well-settled rules, give to it that interpretation which will uphold its validity. The trust created by the testatrix is a valid charitable trust. If circumstances render it impracticable to carry out the trust in the precise manner contemplated by the testatrix, the courts will so apply it as to accomplish the general charitable purpose which it was the design of the testatrix to carry out. The general charitable design of the testatrix was that "refined, educated, Protestant gentlewomen" should be the object of her bounty. The money that she directed to be devoted to this purpose may be inadequate to carry out her purpose in the precise manner contemplated, but that fact of itself furnishes no reason why the class that she intended to aid should not receive the benefit of the aid which it was her intention to give. (*Jackson* v. *Phillips*, 14 Allen [Mass.], 539, 586; *Atty.-Gen.* v. *Ironmongers' Company*, 2 Beav. 313; *Norris* v. *Loomis, supra.*)

No general rule can be enunciated as to the manner in which the *cy pres* doctrine will be applied. Each case must necessarily depend· upon its own peculiar circumstances. Inadequacy of the trust fund to accomplish the purpose of the testator in the manner originally intended may, however, justify the scheme of the charity being changed. If the Supreme Court cannot cause this trust to be carried out in the precise manner contemplated by the testatrix it will apply the trust fund to other charities as nearly as possible like that specifically mentioned in the will. (*Trustees of Sailors' Snug Harbor* v. *Carmody, supra,* at page 300.)

It follows, therefore, that the final decree and order appealed from should be reversed, with costs and disbursements in this court, and the cause remitted to the Surrogate's Court for proceedings in accordance with this opinion.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, CUDDEBACK, CARDOZO and POUND, JJ., concur.

Ordered accordingly.